May I proceed? Okay. I'd like to reserve three minutes. Okay. Manage your time, Bill. I'll try to remind you at three minutes. Okay. And may it please the Court, I represent Michael Balaban. I represent Appellants Sueann Candelaria, Cheryl Shedini, Rosa Cornell, Juliet Ferrara, Cynthia Priola, and Linda Ranconi. This case comes before the Court of Appeals on a grant of motion for summary judgment. And here there was clearly issues of material fact that the judge decided, which the judge should not have decided. The case on point, Anderson v. Liberty Lobby, states if the pleadings, depositions, answers to interrogators' admissions on file together with affidavits show there is no genuine issue of material fact that the moving party is entitled to summary judgment as a matter of law. Actually, that's Celotex v. Caltriggs. You have limited time, so let's get right to where you think this is. That's fine. But I did want to cite from Liberty Lobby. It says at the summary judgment stage, the judge's function. We got it. We got it. Okay. So getting into the argument. I think, maybe, do you have a question? Well, I just wanted to go over each one of you. There are six little cases within this big case here. Yeah. That's fine. And I can start doing that. Okay. With Ms. Candelaria, the judge ruled that there was a prima facie case, but he ruled that they had a legitimate non-discriminatory reasons because she had a bad attitude, too many mistakes, and had poor performance. So what's your evidence of pretext as to her? Well, most of what the court said was, for example, the EOC, they gave no reason on her termination notice. Then for the EOC, they said bad attitude and too many mistakes. Too many mistakes, poor performance. Yeah. Okay. So. And, again, she had worked there 13 years prior. She was not terminated then. I mean, all of a sudden, they took over and she's terminated. But weren't there significant evidence of her poor performance in 2007 and 2008, and then some evidence in 2009? Why isn't that? Correct. I mean, I'm not saying there was evidence of poor performance. Look, all these individuals were at-will employees. As at-will employees, the employer can terminate for any reason or no reason at all. So on all these cases, yes, they've come up with some reasons to say, yeah, we had a reason to terminate her. But why is that pretextual? I don't understand your argument. Why is that pretextual? Well, because we – it's clear to me that those weren't the real reasons. With respect to Ms. Candelaria, she was employed 13 years prior to that. This all happened before the Ruffin management team ever took over, and then she's terminated and replaced by receptionists that were 20, 22, 23, 44, and 30. I mean, again. Well, so she makes her prima facie case. The Ruffin people get to come in and decide what they want to do in terms of, you know, turning over the place of business there. They decide they want to keep, I guess, the best employees, and they look and they see that there were problems with her performance in the past, some of them significant, in the recent past. So how is that pretextual of letting, you know, of their reasons to let her go? Well, again, the fact that they changed their reasoning shows me that they didn't really know what the reason was. And, again, in every case in employment law. Well, let's take Priola. Okay. She was 49 when she was terminated, and she was placed by a 48-year-old, 46-year-old, 37-year-old, and 27-year-old. And the district court, at least according to my notes, said there was really no showing that ‑‑ I'm sorry. Yeah. There was no showing that she was replaced by a substantially younger employee. What's wrong with that? I mean, the district court's argument on Priola is basically that two of the employees that replaced ‑‑ four employees replaced four estheticians that were terminated. And the district court's argument is basically two of them were just ‑‑ Your same age, basically. Yeah. Her same age, basically. And, again, on that one, we would argue that, again, on summary judgments, the facts are supposed to look ‑‑ be looked at in favor of the nonmoving parties, so we would argue that the two younger ones were the ones that replaced Priola in ‑‑ But wasn't the average age of the ‑‑ I think she was an esthetician, hired after her ‑‑ It wasn't higher, but it was ‑‑ It was still higher than the average age of those who were terminated, isn't it? Isn't that correct? The average age of the four estheticians that were ‑‑ Hired. Were hired. I don't believe it was higher than the ‑‑ I think it was lower, but ‑‑ Well, overall, it was higher. If you take all the employees, you get average age prior to termination is 37.1, average age after termination is 38.8. So looking at aggregate. I mean, that's misleading. The better statistic is that the average age of employees that were new hires after they took over was 31, and the average age when ‑‑ of new hires was 31. The average age when they took over was 37.1. So they actually lowered the average age quite a bit. And the other statistics that I find overwhelming is to a 5 to 1 ratio, people under 40 were hired to people over 40. So the intent seems clear to me here that, hey, they were trying to make this place a younger place. In Las Vegas, it's been done before. They revamp the salon or something, and one of the things they want to do is get the age down. Yeah. I mean, I understand your point completely, but I think we still have to go through each individual employee. Yeah. So, you know, for example, you take Ferrar. Yeah. Ferrar. She was doing satisfactory work. There doesn't appear to be any ‑‑ much dispute about that. 59, but she failed the audition. So why wasn't that a legitimate nondiscriminatory reason for not hiring her? Well, again, with Ferrar, yes, she failed the audition. But, again, the person giving the audition had the motive to fail her so that there would be a legitimate reason to terminate. Preola and Roncati passed the auditions. Is that right? Preola ‑‑ well, it's unclear. I mean, the personnel action notice actually says they failed the auditions, but now in the brief, in their opposition brief, they said they did pass, and in fact ‑‑ I'd take that if I were you. What? I mean, I'd take that concession if I were you. Yeah, but I mean ‑‑ Accepting that concession that they passed, then they were fired anyway and told that they were replacing the old crew with the new crew. Correct. Yeah, that was the statement they heard, that they were replacing the old crew with the new crew. Alexandra apparently said at some point she wanted young girls. Correct. Yeah. She said we want young, beautiful girls. Of course, they're disputing that fact, but yes, that was ‑‑ that's what Ms. Candelaria said that was heard. I mean, getting back to Ferraro and also Shedini, I mean, with respect to Shedini, she wasn't even given an audition, even though that's what the Treasure Island said, we're going to give the ‑‑ give an audition to everyone. She wasn't even given an audition. And also on ‑‑ So is it your position that the auditions were just a setup, that these people were toast anyway and this was just a charade to try to cover up an age discrimination? I mean, definitely with respect to Shedini and Ferraro, that appears the case. With respect to Candelaria, she didn't ‑‑ since she was a receptionist, there was no text and stuff. Who was involved in Cornell's due process hearing? I believe ‑‑ I don't ‑‑ I don't recall exactly, but I believe it was Jennifer Martinez and Lori Weeklin, but I'm not sure on that. But again, with respect to Shedini and Ferraro, again, their personnel action notice said reduction in force, and in fact, three people were hired after that. Three nail techs were hired after that. And in their case, the replacements were all very much younger than them, 41 years old. So, again, the main thrust of the argument here is that on summary judgment, that, you know, there ‑‑ I'm not saying summary judgment should not be granted under any circumstances, but here what the court did was he looked at everything in favor of the Treasure Island opposed to the appellants in coming to his decision. And we feel that the plaintiff appellants deserve their day in court. I think we have your argument in hand. Do you want to reserve? Yeah, because I think there's three minutes left. Thank you. Good morning. So I guess I will start by addressing the pretext. Would you identify yourself for the record or audio? Sorry. Wendy Korenczak on behalf of the appellee, Treasure Island. Okay. Let me ask some questions here. Why do Chiodini and Farrar's personnel action notices say that they were terminated because of a reduction in workforce when it appears Treasure Island has never taken that position, that there was a RIF? And they were using the term RIF in a kind of nontraditional way. I guess it was their way of characterizing the whole process of reviewing the ‑‑ the spa and the personnel in the spa and trying to get to a point where they had the five star, five diamond quality people there. So the whole process of evaluating employees and making sure they had the right group of people was kind of commonly referred to as when they were letting people go. Commonly and accurately referred to as a RIF? Because it's not. And it seems significant when we're doing this examination, because it does reflect that the reason may be pretextual. And it's not clear to me from all the papers that were presented why they consistently refer to the, you know, their reasons as a RIF. Right. Because in a RIF you would be eliminating employees and not replacing them. And that is not what was happening here with respect to anybody. The people over 40, the people under 40, it was just however the term that they used to characterize the process they were going through. Right. And you'd have a less subjective reason for terminating people. Typically in a RIF it's financially, usually reasons for it that you have to make across the board cuts. But that's not what happened here. I mean, what happened here is we had a new owner take over the salon, making statements that are questionably inappropriate, I guess, in light of what was happening and the age of the people that ultimately were terminated. What do we do with those comments that were made by both Ms. Martinez and Ms. Rufkin? Yeah. And so those comments in the context of the pretext analysis are one of the items that the plaintiffs were relying on as direct evidence of a discriminatory mode of the comments, and I think also the statistics. But the comments in particular were two. One of them was Ms. Candelaria walked in mid-conversation to a conversation between Ms. Martinez and Ms. Ruffin, and a portion of the conversation that she heard was allegedly Mrs. Ruffin saying something to the effect of, I want young, beautiful girls here. Right. That's what her testimony was. So why isn't, given that summary judgment stage, why isn't that enough evidence as a pretext to get to a jury? I think the district court was correct in characterizing that statement as vague and ambiguous. How is it vague or ambiguous? I mean, who is this woman who supposedly said this? Mrs. Ruffin was the vice president of Treasure Island. Yeah. And Ms. Martinez is the director of the stock. And Ruffin was what was her position? Mrs. Ruffin? Yes. The vice president of Treasure Island, the whole property. Right. So she was really controlling the show, wasn't she? She was, which I think is an important aspect of this. She's the one who said, we want young, beautiful girls here. She said we, part of the conversation that was overheard was her saying, we want young, beautiful girls here. It's unclear, nobody knows, and Ms. Ruffin denied having made that statement. But just that portion of the statement could refer to, you know, we want young, beautiful customers here, so we want, like, a modern. Well, isn't that something that a jury ought to interpret? I mean, you begin to sound, this sounds to me like a genuine dispute of significant fact here as to what the intent was. And if you've got the person controlling the whole thing, says we want young, beautiful girls, a jury would be entitled to believe that that factors into age discrimination claims. Isn't that right? No. I would say no. Again, I would go back to and agree with the district court saying that comment is so vague and ambiguous it doesn't create a material genuine. Why is it vague and ambiguous? It seems pretty declarative. Because it's unclear whether that's referring to even the spa at all. Maybe it's referring to customers of the spa. Maybe it's referring to cocktail servers on the floor. How can it refer to customers? All we want is young and beautiful customers. Anybody who has any money who's 35, 45, 50, get them out of here. We just want young girls in here so that the older employees can take care of them. That doesn't seem to make any sense. Well, don't forget, Mrs. Ruffin is the vice president of Treasure Island, the entire property. So she could have been talking about, you know, nightclubs. She could have been talking about restaurants. Right, right. But you're talking inferences, and at this stage we draw the inferences in favor of the plaintiff. So, I mean, to the extent that one can construe that phrase one way or the other, that's sort of a jury argument, isn't it? So the inference is, if we draw it in favor of the plaintiff, is that they're going to try to get younger employees. So if the thought is that that comment is not vague and ambiguous such that it wouldn't create a material issue of genuine fact, then I would say that, you know, Mrs. Ruffin wasn't the decision-maker with respect to the termination decisions for any of these six plaintiffs. Who's the we? We what? Excuse me? Who's the we what? Who's the we? Who's the we what? Yeah. She doesn't say I want. She says we want, doesn't she? In her quote. She's talking about Treasure Island, period. Who's the we? Again, it's unclear because it's just a portion of a – it would be speculation. And who did the firing? Well, the firing decisions were made by predominantly Mrs. Martinez. Right. And she was part of the conversation. Right. Was she part of that conversation? She was supposedly present for that conversation. Right. So the owner says we want beautiful young women to the person who's doing the – making the decisions. Why is that not a relevant comment when you say she's not the decision-maker? Mrs. Ruffin. Because there's no evidence that it has anything that comment even relates to the spa or hiring decisions in the spa. How about when you – especially when you combine this with Mrs. Martinez's old crew and starting over fresh with a new crew? She made that statement, I think, to Ms. Priola and Ms. Rancotti. Is that right? Correct. That's the allegation. And that was in the context of the termination of the four estheticians, two of whom were in their 20s. And so we've cited in our brief several cases holding that comments like that with the old and with the new are not even age-related utterances. I think the terminology is. What do you do with – apparently some people passed the auditions and were fired anyway. And apparently one of the reasons given was that the person flunked the audition, Rancotti. But she didn't flunk the audition. She was – Passed. She performed well enough at the audition to be kept on, correct. Right. But then she was fired. And the reason given was she flunked. The reason that was recorded on the personnel action form was, I believe it was both reduction in force slash job performance or unprofessionalism, one of the two. Ms. Priola, this is true for Ms. Priola as well. Her personnel action note says she was terminated because she failed the audition, and it's undisputed that she passed her audition. How do you explain that? Yes. So the process that they were using when they came in and were redeveloping the spa and salon was they actually shut it down for a three-month period. They did the auditions at the beginning of that time, and the thought was that the employees that are either hired or kept on will receive training to upgrade their skill level while the spa is being renovated and closed. So the terminations that occurred during that process, even for people who had been part of the audition process, if they were let go, it was still considered to be part of the whole rebuilding of the team that would work in the spa. So it has to make any sense. That doesn't answer my question. It doesn't answer my question, I don't think. No. Why do you put down in the personnel notice that she was terminated for failing the audition when she, in fact, passed the audition? Because they hadn't gotten to the point where they reopened the spa and were working. Did she fail or not? She passed. She performed well enough to be kept on. All right. So the statement that she failed the audition was false. The statement that she was being terminated because there was a reduction in force was false because they didn't reduce their force. So everything on her termination form would indicate that she was terminated for a false reason. Why isn't that raised, a genuine issue of material fact, when the inferences are drawn in favor of the plaintiff of pretext? Well, first of all, the statement that it was part of a reduction in force. It's false. It's a misuse of the terminology, not a precise use of the terminology. Okay. Was the force reduced? Employees were terminated, but they were replaced. Was the force reduced? No. Okay. So that was false. And you could say it's a colloquialism or whatever, but, I mean, we draw the inferences at this stage in favor of the plaintiff. So you have two false reasons on a form of termination. Why isn't that enough to create a genuine issue of material fact on pretext? Well, on that, with indirect evidence, it has to be both specific and substantial, as opposed to direct, which is just minimal. Okay. Let's talk about Roncati then. So no problems with her performance that were documented. No evidence that her replacements were more qualified. She passed the audition. She was 57, and the replacements were 48, 46, 37, and 27. So why hasn't Roncati demonstrated a genuine issue of material fact that would entitle her to go to trial? Well, Ms. Roncati and Ms. Priola, who are the two esthetician plaintiffs in this case, their deposition test Ms. Martinez's testimony about the reason for their termination was, although they performed well enough to continue to be employed after the audition, the attitude of the estheticians was negative and poor. So that was her reason for the termination decision. At deposition, Ms. Priola testified that the group of four estheticians that were terminated complained to each other many times about new management, often complained to each other about the new lead esthetician. They all complained about Mrs. Ruffin. Isn't that, I mean, I hate to say this, but isn't that day-to-day conversation in a spa? I mean, people complain about management all the time, right? I mean, that's what workers do. I don't, A, I don't think that's necessarily true. But, B, I think that certainly does not make it an impermissible reason for an employer to not want that group of people. And so they terminated them as a whole, all four of them, 20s, 40s, 50s, and replaced them with similarly aged individuals. Well, except for Roncati. Well, Roncati, I think, is nine years older than the oldest person. And certainly Chiodini, Chiodini, she was 60. She's a manicurist. I mean, absent, putting all these things together, that's what we've got to look at, is where the inferences fall. And we're not, I'm not arguing with you. What I'm giving you a chance to say, look, the inference, this doesn't matter. So tell me why. A reasonable question of fact doesn't exist. Well, a reasonable, with the indirect evidence of pretext, for the most part it generally consists of the plaintiffs disagreeing that the reasons are accurate that were given for termination. For example, Ms. Farrar, who's the one that failed, the manicurist that failed her audition, the testimony was that they felt like she didn't give a good audition. She was fumbling. She couldn't do a set of acrylic nails. Ms. Farrar comes back. Her evidence of pretext is that, well, she disputes that. She thinks she was not fumbling. And, you know, she did do a good set of acrylic nails. Right. But let's take Roncati again. So she passes the test. She's of the appropriate age. There's no evidence of replacements from her qualified than she is. So all we're left with is negative attitude. Which is corroborated by her own deposition testimony, that her, Priola, and the two other estheticians in their 20s were complaining amongst themselves consistently and frequently. And that was also observed by Jennifer Martinez, who made the decision. So, again, they have to ‑‑ their burden is to come forward with specific and substantial evidence of pretext that the stated reason is. Well, the stated reason that you're referring to is in the deposition, correct? The stated reason, yes. And that was not the stated reason on her termination form, correct? It's not the same. I would say it's not inconsistent, though. Who was kept on? The age of the employees that were kept on. Who was kept on? Well, we give examples. For example, I think we gave an example of a 68‑year‑old hairstylist was kept on. And, again, the average age before the terminations and after the terminations was the same, not within a year, a year and a half of ‑‑ it was 37.1 before versus 38.8 afterwards. And just ‑‑ I just want to go back to the issue of pretext just for a minute because there is a point in some of the cases that I think is important with respect to a plaintiff coming forward and just simply disputing, well, that's not accurate, the reason that you gave for my termination. And that's in the Diaz versus Eagle Produce Ninth Circuit case that they cited in the briefs. And in there they say the focus of the pretext inquiry is not to determine whether the employer was correct in determining the employee's job performance was unsatisfactory, but simply whether the employee's performance was the real reason for the termination. It also says it is not the court's province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination. So to the extent there's the allegation that factual issues exist by, say, for example, Ms. Farrar saying, well, I did perform well in the audition, that that's not the inquiry that's pertinent for the pretext inquiry here. Kagan. Kagan. One more quick. Who was involved in Cornell's due process hearing? The due process hearings at Treasure Island are conducted by the human resources department. So I'm not sure specifically which human resources official it was. But what they do is they bring in both the employee and the manager, the decision  makers, and then they do the due process hearing. So I guess my question, was it Martinez or Rufkin or the other woman who was involved? We do know Martinez was involved, because one of the items that was submitted into evidence is an e-mail communication between her and HR about it. But she's involved, but is she part of the committee? It's not clear to me how that was set up, the due process hearing, you know, and she's  So I don't know if that's what they do, because I've worked with Treasure Island and know how their due process system works, but I don't believe that detail about that was in the record in this case. Any further questions? Thank you for your argument. Yes. Just briefly. I think the Court brought forward a lot of our arguments. I mean, here we have a lot of arguments. Those are just questions. We haven't touched them up. We're not arguing with anybody. Yeah. Well, but again, the point's brought up. I mean, we have the burden just to show that a jury could rule in our favor, that a reasonable jury could rule in our favor. And the fact that in all but one case they gave contradictory reasons which were I mean, that alone should be enough to get over the hump to have a jury hear the case. And for that reason, we feel that clearly here, Judge Hunt erred in granting summary judgment, and we would ask that be overturned and the case go to a trial and see how a jury decides it. Thank you. Thank you for your arguments. Thank you both for your arguments this morning. The case is heard. It will be submitted for decision and will be in recess for the morning.
judges: Trott, Thomas, Murguia